**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

RONALD HASKINS                    *

Plaintiff                              *

v                                       *          Civil Action No. JKB-12-3116

WEXFORD HEALTH SOURCES, INC., *et al.* *

Defendants                         *

*** 

## MEMORANDUM

Pending are defendants' motions to dismiss or for summary judgment. ECF Nos. 15 and 24. Plaintiff opposes the motions. ECF No. 20 and 26. The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, defendants' motions shall be construed as motions for summary judgment and shall be granted.

### Background

Plaintiff claims defendants, who include both medical and correctional staff at Western Correctional Institution (WCI)[1], were deliberately indifferent to his serious medical need when they did not respond to a sick call request he submitted on August 1, 2012, seeking pain medication and a wheelchair. ECF No. 4 at p. 5. Plaintiff explains that he suffered a stroke in 2008, resulting in severe pain in his legs as well as difficulty walking and left-side weakness. In addition to his claim that defendants violated his Eighth Amendment rights, plaintiff claims the failure to provide him with a wheelchair violated his rights under the Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973. *Id.* at pp. 5 – 12. Specifically, plaintiff claims he was denied a request for a wheelchair on August 1, 2012, and denied a nurse sick call

---

[1] During the pendency of this case plaintiff was transferred from WCI to Maryland Correctional Training Center (MCTC), where he is currently housed in a unit located closest to the dining hall. ECF No. 15-4 at p. 2.

appointment on August 4, 2012. He states he needed the wheelchair to get to the chow hall to eat his meals because it was too far away from his housing unit.

Defendant Gary Maynard has provided extensive records concerning plaintiff's stroke, which occurred on August 15, 2008. ECF No. 15 at Ex. 1. While plaintiff claims the stroke was caused by a use of force against him by correctional officers, there is no indication in the extensive medical records that the stroke was caused by any specific event. It is clear, however, that the stroke left plaintiff with left-sided weakness, requiring him to use a quad cane to walk.

In addition to the history of a stroke, plaintiff also suffers from asthma, joint pain, chronic pain syndrome and cervical disc displacement.[2] On July 3, 2012, plaintiff reported to medical staff that he was coming off of lock-up soon and wanted to have an order for bed rest and feed-in because he "can't do all that walking" due to his level of pain. *Id.* The examination revealed plaintiff's gait was "slow, but steady, and he is observed speaking and laughing with staff as he [was] walking in medical." Although he had been prescribed a cervical collar, he was not wearing it at the time of the exam. He was receiving Ultram, baclofen, and Neurontin for pain and physical therapy had been scheduled. Plaintiff was told it was important for him to remain as active as possible so that he does not become more physically debilitated and his request for bed rest and feed-in status was denied. ECF No. 24-5, Ex. 1 at p. 5.

Plaintiff made a request for a wheelchair on July 25, 2012, because he was losing weight and could not walk the distance to the dining hall. ECF No. 24-5, Ex. 1 at p. 13. Dr. Yahya had already evaluated plaintiff for this particular request and had recommended that plaintiff be moved to a housing unit closer to the dining hall and the medical unit, but the documentation had

---

[2] The physical therapy referral for plaintiff dated October 10, 2012, indicates plaintiff's pain radiates to his left shoulder and his right hand and that he suffers from cervical spondylosis (arthritis of the neck). ECF No. 24-5, Ex. 1 at pp. 49- 50. In other records, medical providers indicate plaintiff suffers from disk displacement at two levels of his cervical spine (C4-C5 and C5-C6). *Id.* at pp. 9, 28, 45, and 52.

2

not yet been processed. Plaintiff was then told the documentation would be received within one week. *Id.* Other sick call slips submitted around the time plaintiff claims he was inappropriately denied a wheelchair and not provided with medical care concern his complaints of pain, requests for surgery, and renewal of his medication. *Id.* at pp. 15 – 28.

Plaintiff reported on August 15, 2012, that he had fallen down while walking to the dining hall. Upon investigation, plaintiff was observed on security cameras methodically lowering himself to the ground. Additionally, correctional officers assigned to his housing unit were contacted and they reported that they had never observed plaintiff fall. Despite plaintiff's claim that he falls down a lot, he was not observed to have any bruises, contusions, abrasions, lacerations, or other indications of a recent injury. ECF No. 24-5 at pp. 31 – 33.

On August 28, 2012, plaintiff's prescription for Neurontin (Gabapentin) was declined due to a recent physical therapy evaluation which noted that plaintiff's cervical radiculopathy was improving. Additionally, it was noted that plaintiff had been observed feigning falls on the prison compound. It was again noted that plaintiff was walking with his cane, but was not wearing his medically ordered cervical collar. At that time, plaintiff was suspected of malingering "for secondary gain." ECF No. 24-5, pp. 39 – 40.

### Standard of Review

Summary judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

3

otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De 'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but

4

failed either to provide it or to ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown*, 240 F.3d at 390 (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

To establish a prima facie case under Title II of the ADA or the Rehabilitation Act,[3] the plaintiff must show that (1) he has a disability; (2) he was either excluded from participation in

---

[3] "The ADA and Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts." *Baird ex rel. v. Rose*, 192 F.3d 462, 463 (4th Cir. 1999) (citing *Rogers v. Department of Health, Envtl. Control*, 174 F.3d 431, 433-34 (4th Cir. 1999) (noting that it is appropriate to refer to constructions of the Rehabilitation Act in determining the meaning of an ADA provision)). "Congress has directed courts 'to construe the ADA to grant at least as much protection as provided by the regulations implementing the Rehabilitation Act.'" *Id.*, quoting *Bragdon v. Abbott*, 524 U.S. 624 (1998).

or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) the exclusion, denial of benefits, or discrimination was by reason of his disability. *See Constantine v. George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005); *Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999). States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities. 42 U.S.C. § 12131 *et seq.* A reasonable modification does not require the public entity to employ any and all means to make services available to persons with disabilities. Rather, the public entity is obligated to make those modifications that do not "fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1082 (11th Cir. 2007).

Denial of medical care alone is not enough to establish a violation of the ADA. *See, e.g. Miller v. Hinton*, 288 F. App'x. 901 (4th Cir. 2008) (unpublished) (prison's alleged denial of access to colostomy bags and catheters by inmate, who was a paraplegic confined to a wheelchair who used such supplies for urinary bladder control, did not constitute disability discrimination in violation of ADA absent a showing that inmate was treated in that manner because of his disability); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (medical care provided to inmate for his diabetes could not be basis for RA action); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (inmate's claims under RA and ADA were properly dismissed for failure to state claim as they were based on medical treatment decisions); *Spencer v. Easter*, 109 F. App'x. 571, 573 (4th Cir. 2004) (unpublished) (failure to provide timely refills of prescription drugs did not amount to an ADA violation where there was no showing that it was done based on prisoner's disability); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (holding that the ADA is not "violated by a prison's simply failing to attend to the medical needs

6

of its disabled prisoners. No discrimination is alleged; Bryant was not treated worse because he was disabled.").

## Analysis

Plaintiff's opposition response to defendant Maynard's dispositive motion asserts that Secretary Maynard "was aware of my problems from the beginning to this very day, and I am still being denied medical treatment." ECF No. 20 at p. 1. Plaintiff seeks to establish that his neck was injured when a correctional officer assaulted him in 2008[4] and alleges the refusal to provide him with appropriate medical care is an effort to cover up the cause of his injury. *Id.* He further asserts that Maynard is liable because the medical care contractor, Wexford, failed to provide him with medical services within 72 hours of his request for same. *Id.* at p. 3. Plaintiff does not dispute that Maynard had no personal involvement in decisions regarding his medical care.

The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that (1) the

---

[4] Any claim concerning the 2008 assault is time-barred. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (statute of limitations for §1983 claims is governed by state law statute of limitations where cause of action arose). In Maryland the applicable statute of limitations is three years from the date of the occurrence. *See* Md. Code Ann., Cts & Jud. Proc. § 5-101.

supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Because this court finds there was no constitutional injury suffered by plaintiff, defendant Maynard is entitled to summary judgment.

In his response in opposition to the dispositive motion filed by medical defendants, plaintiff claims that the medical records submitted by defendants are inaccurate and are not relevant to his complaints, making them inadmissible. ECF No. 27 at p. 1. He further asserts that he is disabled within the meaning of the ADA and the Rehabilitation Act because he requires a cane to walk. *Id.* The balance of the response concerns new allegations that plaintiff was transferred to an institution that is not handicapped accessible in retaliation for the instant case and that he is not currently receiving proper medical care at MCTC. *Id.* at pp. 3 – 6.

Plaintiff's bald assertion that his medical records are inaccurate is insufficient to establish a genuine dispute of material fact. Moreover, his disagreement with medical care providers regarding his need for a wheelchair is insufficient to state an Eighth Amendment claim. While plaintiff may be disabled within the meaning of the ADA, the existence of a disability alone is inadequate to state a claim. There is no evidence in this case that plaintiff was denied services because he is disabled; rather, his request for an accommodation was denied based on a medical assessment of his condition that allowing him to become less active would exacerbate his disability.

8

Plaintiff has failed to adequately dispute defendants' evidence that he did not require the wheelchair he requested and that he received adequate medical care in response to his complaints of pain. To the extent plaintiff raises new claims concerning his transfer and treatment at MCTC unrelated to the claim asserted in the instant case, those claims will not be addressed at this time.[5] Defendants are consequently entitled to summary judgment in their favor; a separate order follows.

DATED this _17_ day of June, 2013.

BY THE COURT:

James K. Bredar
United States District Judge

---

[5] Plaintiff remains free to file a separate complaint concerning the new allegations.